COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Russell and AtLee
Argued by teleconference


COMMONWEALTH OF VIRGINIA

v.        Record No. 0535-15-4

THOMAS J. SPINOLA, S/K/A
 THOMAS P. SPINOLA

MEMORANDUM OPINION[*] BY
JUDGE WESLEY G. RUSSELL, JR.
SEPTEMBER 8, 2015


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Victoria A. B. Willis, Judge

Elizabeth C. Kiernan, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs), for appellant.

Mark S. Gardner (Gardner & Haney, P.C., on brief), for appellee.


Pursuant to Code § 19.2-398, the Commonwealth appealed from the circuit court's March

26, 2015 order granting appellee's motion to suppress the evidence.  Appellee moved to dismiss

the appeal, arguing that the notice of filing transcript and the petition for appeal were untimely

filed.  For the reasons that follow, we agree with appellee and dismiss the Commonwealth's

appeal.

BACKGROUND

Thomas J. Spinola, s/k/a Thomas P. Spinola ("appellee") was charged with possession

with the intent to distribute methamphetamine in violation of Code § 18.2-248, conspiracy to

violate the Drug Control Act in contravention of Code § 18.2-256, and transportation of a

controlled substance into the Commonwealth in violation of Code § 18.2-248.01.  The charges

arose from the search of a vehicle that had been stopped for speeding and in which appellee had

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

been a passenger.  In the course of the search, officers discovered the illicit substances giving rise to the charges.

Appellee moved to suppress the substances found as a result of the search of the vehicle.[1] The circuit court heard the motion to suppress on March 18, 2015, and, from the bench, announced it was granting the motion.  After the circuit court's announcement, the Commonwealth stated its intention to appeal.  The court reporter, at the request of the Commonwealth, prepared the original transcript of the suppression hearing.  The court reporter then sent the transcript to the circuit court clerk's office for filing on March 23, 2015.  The court reporter included a cover letter indicating that copies of the letter and transcript had been transmitted to counsel for the parties.  The court reporter's letter indicated that the package included the transcript, which was "to be *filed* this day . . . in the above styled case . . . ." (Emphasis added).  The original transcript was date-stamped and filed in the circuit court clerk's office on March 24, 2015.  The Commonwealth acknowledged in its pleadings before us that it received a copy of the transcript from the court reporter on the same day, March 24, 2015.

On March 26, 2015, after both parties already had received copies of the transcript from the court reporter,[2] the circuit court entered its written order granting the motion to suppress the evidence.  The Commonwealth filed its notice of appeal in the circuit court on March 30, 2015. On April 14, 2015, the Commonwealth filed both a copy of the suppression hearing transcript and a notice of filing transcript in the circuit court.  There is no dispute that the copy of the transcript filed by the Commonwealth was a duplicate of the copy previously filed by the court

---

[1] Having determined that the Commonwealth's appeal must be dismissed, the facts surrounding the traffic stop and the subsequent search are immaterial to our resolution of this case, and thus, we do not detail them here.  Accordingly, we offer no opinion on the propriety of the search or the substance of the trial court's resolution of the motion to suppress.

[2] In its reply brief, the Commonwealth acknowledges this fact, writing "To be sure, both parties had the transcript in advance of the circuit court's order . . . ."

reporter.  The Commonwealth mailed, by certified mail, its petition for appeal to this Court and to appellee on April 24, 2015.

On May 6, 2015, appellee filed in this Court a motion to dismiss the appeal, arguing that neither the notice of filing transcript nor the petition for appeal were timely filed.  On May 11, 2015, the Commonwealth filed an opposition to the motion to dismiss.  For the following reasons, we grant the motion and dismiss the Commonwealth's appeal.

ANALYSIS[3]

The motion to dismiss poses questions of statutory construction.  When considering such questions, "our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute."  Cuccinelli v. Rector & Visitors of the Univ. of Virginia, 283 Va. 420, 425, 722 S.E.2d 626, 629 (2012) (quoting Commonwealth v. Amerson, 281 Va. 414, 418, 706 S.E.2d 879, 882 (2011)) (further citation and internal quotation marks omitted).  In doing so, we "give statutory language its plain meaning . . . ," Davenport v. Little-Bowser, 269 Va. 546, 555, 611 S.E.2d 366, 371 (2005) (citing Jackson v. Fidelity & Deposit Co., 269 Va. 303, 313, 608 S.E.2d 901, 904 (2005)), recognizing that we are to view the words of the statute in "'the context in which they are used,'" City of Virginia Beach v. Bd. of Supervisors, 246 Va. 233, 236, 435 S.E.2d 382, 384 (1993) (quoting Grant v. Commonwealth, 223 Va. 680, 684, 292 S.E.2d 348, 350 (1982)).  Because the Commonwealth's statutory right to appeal is in derogation of the general prohibition against appeals by the Commonwealth, the statutory requirements "must be strictly construed against the state and limited in application to cases falling clearly within the language of the statute."  Commonwealth v. Hawkins, 10 Va. App. 41, 44, 390 S.E.2d 3, 5 (1990) (citations omitted).

---

[3] The motion to dismiss the Commonwealth's appeal filed in this Court was not part of the proceedings below, and thus, there is no ruling of the circuit court regarding the motion for us to "review."  Rather, we address the motion to dismiss in the first instance.

- 3 -

Code § 19.2-398(A)(2) grants the Commonwealth the right to appeal a circuit court's granting of a motion to suppress and exclusion of evidence that "was obtained in violation of the provisions of the Fourth . . . Amendment[] to the Constitution of the United States or Article I, Section . . . 10 . . . of the Constitution of Virginia prohibiting illegal searches and seizures . . . ."[4]

In addition to granting the Commonwealth the right to appeal an adverse ruling on a motion to suppress, the General Assembly specified by statute the manner in which the Commonwealth is required to perfect such an appeal. Code § 19.2-402(B) provides in pertinent part:

> The provisions of this subsection apply only to pretrial appeals. The petition for a pretrial appeal shall be filed with the clerk of the Court of Appeals not more than 14 days after the notice of transcript or written statement of facts required by § 19.2-405 is filed or, if there are objections thereto, within 14 days after the judge signs the transcript or written statement of facts.

Thus, the due date for filing the petition for appeal is triggered by the filing of the notice of filing transcript in compliance with Code § 19.2-405, which provides:

> The transcript or written statement of facts shall be filed with the clerk of the circuit court from which the appeal is being taken, no later than 25 days following entry of the order of the circuit court. Upon motion of the Commonwealth, the Court of Appeals may grant an extension of up to 45 days for filing the transcript or written statement of facts for good cause shown. If a transcript or written statement of facts is filed, the Commonwealth shall file with the clerk of the circuit court a notice, signed by the attorney for the Commonwealth, who is counsel for the appellant, identifying the transcript or written statement of facts and reciting its filing with the clerk. There shall be appended to the notice a certificate by the attorney for the Commonwealth that a copy of the notice has been mailed or delivered to opposing counsel. *The notice of filing of the transcript or written statement of facts shall be filed within three days of the filing of the transcript or written*

---

[4] Code § 19.2-398(A)(2) also requires the Commonwealth to certify "that the appeal is not taken for purpose of delay and that the evidence is substantial proof of a fact material in the proceeding." The Commonwealth so certified in this case.

> *statement of facts or within 14 days of the order of the circuit*
> *court, whichever is later.*

(Emphasis added).

Appellee contends that the Commonwealth's appeal must be dismissed because the hearing transcript that is the subject of the Commonwealth's appeal was filed on March 24, 2015, when the clerk of the circuit court accepted and date-stamped the transcript that had been provided by the court reporter for the explicitly stated purpose of filing. Appellee argues that the filing of the transcript on that date resulted in the notice of filing transcript being due on April 9, 2015, fourteen days after the order of the circuit court.[5] Thus, according to appellee, the Commonwealth's notice of filing transcript, filed on April 14, 2015, and therefore, the subsequently filed petition for appeal, filed on April 24, 2015, were untimely.

The Commonwealth argues that the court reporter's transmission of the transcript to the circuit court clerk is of no moment because "the Commonwealth chose not to rely on a third party filing the transcript . . . ." The Commonwealth asserts that, pursuant to Code § 19.2-405, a transcript may be filed up to twenty-five days after a circuit court enters its order. Thus, according to the Commonwealth, the copy of the transcript and the simultaneously filed notice of filing transcript that the Commonwealth filed on April 14, 2015, and the subsequently filed petition for appeal were timely.

In resolving the motion, we first hold that the transcript was filed for the purposes of Code § 19.2-405 on March 24, 2015, when the clerk of the circuit court received and

---

[5] If one accepts that the transcript was filed before the circuit court entered the order, Code § 19.2-405 dictates that the deadline for filing the notice of filing transcript is timed from the entry of the order as opposed to the filing of the transcript because the deadline tied to the entry of the order, by necessity, ran after the deadline tied to the filing of the transcript.

- 5 -

date-stamped the copy transmitted by the court reporter.[6] To hold otherwise would be to ignore the common understanding of "filed" in this context and our own precedent.

The transcript was provided to the clerk of the circuit court for the express purpose of being filed, and all parties were given notice that the transcript had been delivered to the clerk "to be *filed* this day . . . in the above styled case . . . ." (Emphasis added). The clerk accepted it and marked it filed. Furthermore, we previously have held that "'[a] document is considered filed when delivered to the clerk for filing.'" Waller v. Commonwealth, 27 Va. App. 71, 75, 497 S.E.2d 508, 510 (1998) (quoting Rhem v. State, 820 S.W.2d 946, 947 (Tex. Crim. App. 1991)). In short, there can be no serious question that the transcript was filed on March 24, 2015.[7]

By the express terms of the statute, once a transcript is filed, regardless of who files it, the deadline for the filing of the notice of filing transcript begins to run and will expire three days after the filing of the transcript or fourteen days after "the order of the circuit court, whichever is later." Code § 19.2-405. Accordingly, the notice of filing transcript was due within fourteen days of the circuit court's March 26, 2015 order, and thus, was untimely when filed by the Commonwealth on April 14, 2015.

The Commonwealth's reliance on the portion of Code § 19.2-405 that provides that a transcript must be filed with the clerk "no later than 25 days following entry of the order of the circuit court" is misplaced.[8] This portion of the statute sets the outer limit for when a transcript

---

[6] In its written opposition to the motion, the Commonwealth, when represented by the Office of the Commonwealth's Attorney, see Code § 19.2-402(A), conceded that, if, for purposes of Code § 19.2-405, we find that the transcript was filed on March 24, 2015, "the petition for appeal in this case has not been timely filed." At oral argument, the Commonwealth, now represented by the Office of the Attorney General, repudiated the concession.

[7] Although finding it to be immaterial for the purposes of appellate deadlines, even the dissent characterizes the court reporter's actions as "filing" the transcript.

[8] The statute provides that the twenty-five-day period may be extended by this Court for "up to 45 days . . . for good cause shown."

- 6 -

may be filed; it does not trigger the deadline for the filing of the notice of filing transcript. Contrary to the Commonwealth's position, the statute does not allow the Commonwealth to reset the clock by filing yet another copy of the exact same transcript after the circuit court enters its order.

Although our conclusion is amply supported by the plain language of Code § 19.2-405, it is further supported by the legislative changes to Code §§ 19.2-402 and 19.2-405 unanimously adopted by the General Assembly in 2014. Prior to 2014, the deadline for filing the petition for appeal was not tied to the filing of the notice of filing transcript, but rather, was triggered by the filing of the actual transcript. 2014 Va. Acts ch. 33. Furthermore, the statute specified that the transcript was to be filed "by the Commonwealth." Id. In the 2014 amendments, the General Assembly struck the language "by the Commonwealth" from the statute, making clear that the filing of the transcript could be accomplished by a person or entity other than the Commonwealth.

The 2014 amendments appear to have resulted from the issues this Court faced in Commonwealth v. Mitchell, No. 0741-13-3, 2013 Va. App. LEXIS 251 (Va. Ct. App. Sept. 10, 2013).[9] See generally Washington v. Commonwealth, 46 Va. App. 276, 281, 616 S.E.2d 774, 777 (2005) ("[W]e assume legislative familiarity with Virginia case law when the legislature enacts a statute which might impact upon that law."). In Mitchell, the transcript was filed by a party other than the Commonwealth while the circuit court had the matter under advisement.[10] The circuit court issued its order more than a month after the transcript was filed. 2013 Va. App.

---

[9] Although they have no precedential value, unpublished opinions of this Court are nevertheless persuasive authority. Otey v. Commonwealth, 61 Va. App. 346, 351 n.3, 735 S.E.2d 255, 258 n.3 (2012).

[10] The opinion does not indicate whether it was filed by the defendant, the court reporter, or a different person altogether.

LEXIS 251, at *2. The Commonwealth timely filed a notice of filing transcript, but did not refile the transcript that was already in the circuit court file. Id. at *3. A divided panel of this Court held that, despite the statute's language that the transcript be filed "by the Commonwealth," it did not require the Commonwealth to refile the same transcript that already had been filed. Id. at *4-5. Further, the majority noted that the petition for appeal was timely even though it had been filed more than fourteen days after the transcript was filed, reasoning that a literal reading of the statute was absurd because it would have meant that the Commonwealth's petition for appeal would have been due *before* the circuit court had ruled. Id. at *4.

A judge on the panel dissented, concluding that the statute required the transcript to be filed by the Commonwealth, and therefore, the Commonwealth could have extended the deadline by filing a copy of the exact same transcript within twenty-five days of the entry of the circuit court's order. Id. at *11-12. The legislative changes adopted by the General Assembly effectively reject the position of the dissent in Mitchell (and the Commonwealth in this case) by striking the language "by the Commonwealth" from Code § 19.2-402. Furthermore, the changes addressed the potential absurdity noted by the majority by now tying the filing of the petition for appeal to the notice of filing transcript, which is now due three days after the filing of the transcript or within "14 days of the order of the circuit court, whichever is later." Code § 19.2-405.

Accordingly, we reject the Commonwealth's argument that its subsequent filing of the transcript is the operative event under the statute and that such filing rendered the court reporter's filing of the same transcript a nullity.

The dissent essentially adopts the Commonwealth's view, noting that our appellate procedures place the burden on an appellant to make sure the record before us is sufficient to address the appellate issue raised. The statement is unquestionably true; however, it is

immaterial to the issue before us: determining when the transcript was filed. Although the Commonwealth would have suffered the consequences of there being no transcript, that does not change the fact that the transcript of the hearing on which the Commonwealth based its appeal was filed in this case by the court reporter, and thus, the record the Commonwealth deemed necessary for us to reach the appellate issue was complete prior to the Commonwealth's filing of a duplicate of that transcript.

We are aware of no currently applicable case, statute or rule of appellate procedure that even suggests that an appellant can rely only on transcripts that it, as opposed to another party, has filed, and the dissent does not identify one. Ironically, prior to the 2014 amendments to Code §§ 19.2-402 and 19.2-405, the statutory language suggested that might be the case in a Commonwealth's appeal by requiring that the transcript was to be filed "by the Commonwealth." The fact that the General Assembly struck this language is at least a tacit rejection of the dissent's position.

Faced with the General Assembly's decision to strike "by the Commonwealth" from the statute, the dissent posits that the amendment was intended to benefit the Commonwealth alone, allowing it the sole discretion to either adopt the filing of a transcript by another party or to extend the period of time to perfect the appeal by waiting up to twenty-five days to file a duplicate of a transcript that has already been filed.

Such an interpretation fails for two reasons. First, the language employed by the General Assembly is neutral, neither favoring nor disfavoring the Commonwealth. To achieve its meaning, the dissent must graft onto the statute a favoritism for the Commonwealth that simply

cannot be found in the words used.[11]  Second, it allows the Commonwealth to unnecessarily

delay perfecting an appeal in contravention of the purpose of the statutory scheme, which we

have recognized is to facilitate a "prompt determination of whether a prosecution can effectively

move forward or whether a defendant should be released."  Mitchell, 2013 Va. App. LEXIS 251,

at *8.

Having found that the notice of filing transcript was not timely filed, we address the

impact of the failure to timely file.  Failure to timely file a notice of filing transcript is ordinarily

governed by Rule 5A:8(b)(4).  Rule 5A:8(b)(4) provides that the failure to timely file a notice of

filing transcript

> that materially prejudices an appellee will result in the affected
> transcripts being stricken from the record on appeal.  For purposes
> of this Rule, material prejudice includes preventing the appellee
> from raising legitimate objections to the contents of the transcript
> or misleading the appellee about the contents of the record.  The
> appellee shall have the burden of establishing such prejudice in the
> brief in opposition or, if no brief in opposition is filed, in a written
> statement filed with the clerk of this Court within twenty-one days
> after the record is received by the clerk.

In a Commonwealth's appeal, however, the filing of the notice of filing transcript takes

on additional significance because the Commonwealth's petition for appeal is due in this Court

"not more than 14 days after the notice of transcript or written statement of facts required by

§ 19.2-405 is filed . . . ."  Code § 19.2-402.[12]  Thus, the petition for appeal had to be filed in this

Court by April 23, 2015, fourteen days after the notice of filing transcript was actually due.

---

[11] It also flies in the face of our precedents, which dictate that the statutory language "must be strictly construed against" the Commonwealth.  Hawkins, 10 Va. App. at 44, 390 S.E.2d at 5.

[12] The statute provides an extended deadline if an objection to the transcript or written statement of facts has been filed.  No such objection was filed in this case.

The Commonwealth argues that, even if the notice of filing transcript was untimely, the petition for appeal was timely filed because, consistent with Code § 19.2-402(B), the petition for appeal was filed within fourteen days of when the Commonwealth belatedly filed the notice of filing transcript. We reject such an interpretation of the statutory scheme because it would allow the Commonwealth to postpone pursuing an appeal indefinitely by choosing to delay the filing of the notice of filing transcript. As noted above, this would frustrate the statutory scheme's purpose, which is to facilitate a "prompt determination of whether a prosecution can effectively move forward or whether a defendant should be released." Mitchell, 2013 Va. App. LEXIS 251, at *8.

The dissent raises two hypothetical scenarios regarding attempts by a litigant to "game" the system and place the Commonwealth at a disadvantage. Both are easily distinguishable from this case.

The first posits that a litigant surreptitiously will lodge a transcript with the circuit court clerk without providing notice to the Commonwealth, causing the deadlines in Code § 19.2-405 to begin to run without the Commonwealth's knowledge. There is no dispute in this case that the Commonwealth was given notice of the filing of the transcript (and had, in fact, received the prepared transcript as of March 24, 2015), and thus, this scenario is not before us; however, if it were to occur, a reviewing court would be free to recognize that the secret lodging of the transcript represented an impermissible *ex parte* contact and give such an attempt at filing the respect it is due.

The second posits that a litigant will attempt to trigger the deadlines by filing a portion of the relevant transcript. In this case, there is no dispute that the entire transcript was filed by the court reporter and that the Commonwealth was seeking to file an exact duplicate of what had already been filed. Thus, this scenario is not before us; however, if it were to occur, a reviewing

- 11 -

court would be free to find that the deadlines began to run once the Commonwealth filed the entire transcript that it deemed necessary for resolution of its appeal.

Even if a reviewing court were to conclude that these hypotheticals are not distinguishable from this case, the Commonwealth's right to appeal is still protected. The Commonwealth, contrary to the dissent, would not be faced with a defaulted appeal because the deadline for filing a notice of filing transcript pursuant to Code § 19.2-405 is either "within three days of the filing of the transcript or written statement of facts or within 14 days of the order of the circuit court, *whichever is later*. . . ." (Emphasis added). The Commonwealth easily can avoid default in these circumstances by filing the notice of filing transcript within fourteen days of the circuit court's order. By doing so, the Commonwealth will always be insulated from the hypothetical threats to our jurisdiction posited by the dissent.

Returning to the facts of this case, the Commonwealth did not file its petition for appeal by the April 23, 2015 deadline. Because the deadlines in the statute "must be strictly construed against" the Commonwealth, Hawkins, 10 Va. App. at 44, 390 S.E.2d at 5, we grant appellee's motion and dismiss the Commonwealth's appeal. Commonwealth v. Square, No. 2526-11-2, 2012 Va. App. LEXIS 202 (Va. Ct. App. June 12, 2012) (holding that, if the Commonwealth's petition for appeal is "not timely filed, we are without jurisdiction . . ."). See also Haywood v. Commonwealth, 15 Va. App. 297, 298-99, 423 S.E.2d 202, 203 (1992) (*en banc*) (dismissing appellant's appeal when petition for appeal was not timely filed); Long v. Commonwealth, 7 Va. App. 503, 506, 375 S.E.2d 368, 369 (1988) (*en banc*) (same).

CONCLUSION

For the reasons stated above, we find that both the Commonwealth's notice of filing transcript and petition for appeal were not timely filed. Accordingly, we grant appellee's motion

to dismiss and dismiss the Commonwealth's appeal.  The matter is remanded to the circuit court

for such further proceedings as the Commonwealth deems appropriate.

<u>Dismissed.</u>

Humphreys, J., dissenting.

I write separately because I respectfully disagree with the analysis of my colleagues and with the judgment they reach dismissing this appeal by the Commonwealth. Instead, I would deny appellee's motion to dismiss the appeal, address the merits of the issues raised in the two assignments of error, and affirm the judgment of the circuit court for the reasons stated below.

APPELLEE'S MOTION TO DISMISS

With respect to appellee's motion to dismiss this appeal, I believe that the majority's reading of Code §§ 19.2-402 and 19.2-405 is overbroad and will provide others, including a criminal defendant, with the ability to effectively limit or completely deprive the Commonwealth of its statutory right to an interlocutory appeal in criminal cases. The analysis and holding of the majority allows any person to trigger the time clock for when the Commonwealth must file its petition for appeal through the filing of a transcript without the knowledge, direction or approval of the attorney for the Commonwealth. This construction of the statute by my colleagues in the majority conflicts with well-established appellate principles and, in my view, leads to absurd results.

Appellee's motion to dismiss this appeal presents this Court with a narrow issue of first impression: whether the initial filing of the transcript by the court reporter on March 24, 2015, prior to the entry of the final order by the circuit court suppressing the evidence, activated the running of the time period for filing the notice of filing of the transcript pursuant to Code § 19.2-405 and derivatively, and thereby also triggering the running of the time limit for filing the petition for appeal.

The majority opinion concludes that the 2014 legislative amendments to Code § 19.2-405 were prompted by this Court's opinion in Commonwealth v. Mitchell, No. 0741-13-3, 2013 Va. App. LEXIS 251 (Va. Ct. App. Sept. 10, 2013). In analyzing Mitchell, the

- 14 -

majority acknowledges that in that case, "[t]he record [did] not reveal who filed this transcript." Id. at *3. Still, the record in Mitchell did support the fact that the Commonwealth, at the very least, adopted or ratified the filing of the transcript filed prior to the final order thereby meeting the statutory requirements. Id. at *8. Conversely, in this case, there is no evidence in the record that the court reporter filed the transcript pursuant to instructions from the Commonwealth or on its behalf. Nor is there any evidence that the Commonwealth sought to rely on or adopt the filing of the transcript by the court reporter to satisfy the filing requirements under the statute. At most, the record indicates that the Commonwealth simply requested a transcript be prepared by the court reporter.

As the basis for the majority's conclusion that the 2014 amendments to Code § 19.2-405 were intended to allow parties other than the Commonwealth to control its ability to exercise its statutory right to appeal, the majority notes that the legislative amendments struck the language "by the Commonwealth" with regard to the transcript filing from Code § 19.2-405. Accordingly, the tension between the analysis of the majority and my own necessarily involves the differences in our respective exercises in statutory interpretation.

The basic objective of statutory construction "is to ascertain and give effect to legislative intent." Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983). Because the Commonwealth's right to appeal is in derogation of the general prohibition against such appeals, this right "must be strictly construed against the state and limited in application to cases falling clearly within the language of the statute." Commonwealth v. Hawkins, 10 Va. App. 41, 44, 390 S.E.2d 3, 5 (1990) (citations omitted). However, this Court is precluded from construing "a statute . . . so that it leads to absurd results." Auer v. Commonwealth, 46 Va. App. 637, 651, 621 S.E.2d 140, 147 (2005). Thus, "where a particular construction of a statute will result in an

absurdity, some other reasonable construction which will not produce the absurdity will be found." Miller v. Commonwealth, 180 Va. 36, 41, 21 S.E.2d 721, 723 (1942).

In my view, the statutory amendment following this Court's decision in Mitchell was intended to address any concern suggested by the dissent in Mitchell, although unfounded in my view, that the statute as previously drafted provided that only the attorney for the Commonwealth could file the transcript for an appeal by the Commonwealth and not an agent acting on the Commonwealth's behalf such as the court reporter. This view is supported by the context of Code § 19.2-405 when read as a whole. Even when considered in context with our decision in Mitchell, it seems obvious to me that the intent of the 2014 amendment was to clarify Code § 19.2-405 to permit the practice utilized in many jurisdictions allowing others, usually court reporters or employees of the Commonwealth's Attorney, to act as agents of the Commonwealth's Attorney for the purpose of filing a transcript with the circuit court, as was the case in Mitchell. Code § 19.2-405 ought not be read so broadly to allow *any* third party the ability to execute such a filing irrespective of any direction, ratification or approval by the Commonwealth. To hold such, as the majority does, is inapposite to established appellate principles and leads to the absurd result of allowing anyone the opportunity to deprive the Commonwealth of its already limited right to appeal.

Specifically, the majority's construction of the statute disregards the well-settled principle that an

> appellant who seeks the reversal of a decree on the ground that it is
> contrary to the law and the evidence has the primary responsibility
> of presenting to this court, as a part of the printed record, the
> evidence introduced in the lower court, or so much thereof as is
> necessary and sufficient for us to give full consideration to the
> assignment of error.

Lawrence v. Nelson, 200 Va. 597, 598-99, 106 S.E.2d 618, 620 (1959) (citations omitted).

Although the Commonwealth may rely on a third party, such as a court reporter, to execute filing

duties under the statute as its agent, doing so does not remove the responsibility from the attorney for the Commonwealth to ensure that the record is accurate and that all deadlines and statutory requirements are met. In fact, Code § 19.2-405 specifically directs:

> The *Commonwealth shall file* with the clerk of the circuit court a notice, signed by the attorney for the Commonwealth . . . identifying the transcript or written statement of facts and reciting its filing with the clerk. *There shall be appended to the notice a certificate by the attorney for the Commonwealth* that a copy of the notice has been mailed or delivered to opposing counsel.

(Emphasis added). The language of this statute indicates that the General Assembly has not altered the established legal principle that the Commonwealth, as the appellant, has the affirmative duty to satisfy the statutory requirements of Code §§ 19.2-402 and 19.2-405.

Moreover, under the majority's analysis, construing the third sentence of Code § 19.2-405 which, as amended, omits the words "by the Commonwealth" after the word "filed" with the remainder of the paragraph that requires the Commonwealth to provide notice and a certification of notice of such filing, the Commonwealth is now required to file notice of the filing of a transcript that anyone may have filed at any time, with or without the actual knowledge or consent of the attorney for the Commonwealth. I conclude that this result is absurd and clearly not intended by the General Assembly in its 2014 amendment to Code § 19.2-405.

Further, if the Commonwealth is bound on appeal by the filing of a transcript unknowingly filed by a third party, it would be forced to begin to perfect the appeal, even if the final order had not yet been entered by the circuit court. In such a scenario, as is the case here, the Commonwealth is now expected to comply with the statutory deadlines that began to run prior to the entry of a final order, even when the Commonwealth had not yet taken steps to exercise its right to appeal. Moreover, under the majority's reasoning, any person has the authority to prematurely trigger the appellate process on behalf of the Commonwealth by filing a

- 17 -

full or partial transcript, whether it be a well-meaning court reporter or a defense attorney who strategically seeks an advantage for his client by limiting or eliminating the opportunity for the Commonwealth to appeal those issues permitted by statute. Such a scenario would not only frustrate the legislative and constitutional purpose of providing the Commonwealth with the right to pursue certain pre-trial appeals, but would also compromise the Commonwealth's ability to perfect such appeals under Code §§ 19.2-402 and 19.2-405.

This is not to say that the 2014 amendment was a nullity and the transcript may only be filed by the attorney for the Commonwealth; rather, as I construe Code § 19.2-405 as amended, if the transcript is filed by someone other than the prosecutor, the Commonwealth must either authorize the third party to execute the filing, or the Commonwealth must subsequently approve or adopt such filing, as was the case in Mitchell. Although neither Mitchell nor our decision here is binding precedent, I agree with and adopt the conclusion by the majority in Mitchell that, "the General Assembly has chosen to provide those who represent the people of the Commonwealth with a limited right to appeal. We decline to read the Code in a way that pointlessly frustrates this policy objective." Mitchell, 2013 Va. App. LEXIS 251, at *8.

Therefore, unless the Commonwealth authorizes, ratifies or subsequently adopts the initial transcript filing by the court reporter or other third party, I would hold that a court reporter or anyone else's *sua sponte* filing of the transcript should be disregarded for purposes of calculating the deadlines contained in Code §§ 19.2-402 and 19.2-405.

Based upon this construction of the statutory scheme, I conclude that because the final order was entered on March 26, 2015, the deadline for filing the transcript was twenty-five days later on April 20, 2015. The only transcript filed by or on behalf of the Commonwealth occurred on April 14, 2015, well before the statutory deadline. Further, because the Commonwealth filed its notice of filing of the transcript on the same day it filed the transcript, it also complied with

the requirement that the notice of filing of the transcript be filed within three days of the date the transcript was filed. Finally, the Commonwealth filed its petition for appeal on April 24, 2015, within fourteen days of the notice of filing of the transcript on April 14, 2015. Because I would find that the Commonwealth's appeal was properly perfected, I would deny appellee's motion to dismiss the appeal and reach the merits of the assignments of error.

<u>MERITS OF THE APPEAL</u>

"In an appeal by the Commonwealth of an order of the trial court suppressing evidence, the evidence must be viewed in the light most favorable to the defendant and findings of fact are entitled to a presumption of correctness unless they are plainly wrong or without evidence to support them." <u>Commonwealth v. Peterson</u>, 15 Va. App. 486, 487, 424 S.E.2d 722, 723 (1992). Therefore, in this case, I view the evidence in the light most favorable to appellee because the circuit court sustained his motion to suppress the evidence. However, this Court "review[s] *de novo* the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case." <u>Cherry v. Commonwealth</u>, 44 Va. App. 347, 356, 605 S.E.2d 297, 301 (2004).

So viewed, the record established that on May 19, 2014, appellee was a passenger in a GMC Yukon with New York plates, driven by his co-defendant, Matthew Guagliardo ("Guagliardo"). As the vehicle passed Trooper Brandon Burns of the Virginia State Police ("Trooper Burns"), who was in an unmarked police cruiser, Guagliardo looked over at him, then "stared at [him] for a quick second and then very, very, slowly, panned back." Because Trooper Burns believed this behavior to be unusual, he moved into the left-hand lane and paced the vehicle for four-tenths of a mile and determined the vehicle was traveling seventy-two miles per hour in a sixty-five mile-per-hour zone. Trooper Burns then initiated a traffic stop for speeding. Nothing else about the vehicle or its operation attracted Trooper Burns's attention.

- 19 -

Trooper Burns approached the Yukon, explained the reason for the stop, and requested driver's licenses from both occupants and the vehicle registration. Appellee provided a rental car agreement in lieu of the vehicle registration. Trooper Burns directed Guagliardo to sit in the police cruiser while he checked both men's licenses for any outstanding warrants, with negative results. Trooper Burns asked Guagliardo about his trip. Guagliardo explained the two men were coming from Myrtle Beach, South Carolina, where they had visited Guagliardo's daughter. Trooper Burns left Guagliardo in the police cruiser and went back to the Yukon to speak with appellee.

Trooper Burns asked appellee where he was coming from, to which appellee answered that the two men were coming from visiting a friend named "Unc" somewhere near Atlanta, Georgia. Trooper Burns advised that the rental agreement provided that appellee was the only authorized driver and that the vehicle could not be driven outside New York, New Jersey, and Pennsylvania. Trooper Burns confirmed there was no complaint from the vehicle's owner and that the date of the stop was within the rental period. Trooper Burns acknowledged that he had never arrested anyone for unauthorized use of a vehicle under these circumstances and did not charge appellee with that offense.

Trooper Burns then returned to his cruiser where Guagliardo had remained and sent a message on the computer to his partners, one of which had a K-9 unit, asking them to meet him at his location. Guagliardo then volunteered to Trooper Burns that he had also been in Georgia, as well as Myrtle Beach. Less than twelve minutes into the traffic stop, Trooper Burns issued a warning for the speeding violation to Guagliardo and returned his documents. As Guagliardo exited the police cruiser, Trooper Burns directed him to stand at the front of the cruiser and asked him if he had any contraband or drugs in the car. Guagliardo responded in the negative. Trooper

Burns then asked for his permission to search the vehicle. Guagliardo responded that the vehicle was not his and that appellee would need to give permission for the search.

Trooper Burns again approached the Yukon and asked appellee to step out of the vehicle because he would need to drive in accordance with the rental agreement. Trooper Burns then returned appellee's driver's license. As appellee turned to walk back to the car, Trooper Burns asked about contraband in the vehicle and then requested appellee's consent to search the vehicle. Appellee did not consent to a search and then asked Trooper Burns if he was free to leave. Trooper Burns responded "no, you can't go" and directed both men to stand on the shoulder of the road and wait for the drug-sniffing dog to arrive. Trooper Burns then asked appellee's permission to run the dog around the vehicle to which appellee responded, "yeah, yeah." Approximately two minutes later, Trooper Burns's partner arrived with the dog. The dog alerted and a subsequent search uncovered 120 grams of crystal methamphetamine. After an evidentiary hearing, the circuit court granted appellee's motion to suppress, holding "the [c]ourt is unable to find reasonable, articulable suspicion of further criminal activity that would justify the continued detention and use of the K-9."[13]

### A. Continued Detention

It is uncontested that the initial seizure of appellee during the traffic stop for speeding was reasonable. However, "[a] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." Illinois v. Caballes, 543 U.S. 405, 407 (2005). In April 2015, the Supreme Court of the United States held in Rodriguez v. United States, 135 S. Ct. 1609 (2015), that a police

---

[13] While the circuit court did not address the Commonwealth's probable cause argument from the bench, the final order finds "there was not probable cause of any further criminal activity to warrant the defendant being detained after the conclusion of the traffic stop." I also note that the final order does not memorialize the circuit court's holding from the bench that the evidence presented did not support reasonable suspicion that criminal activity was afoot.

officer "may conduct certain unrelated checks during an otherwise lawful traffic stop," but "may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." Id. at 1615. "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." Id. at 1614. Thus, "a traffic stop 'can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a warning ticket," and officers may not conduct unrelated investigations to prolong the traffic stop, *absent independent reasonable suspicion* ordinarily required to detain the individual. Id. at 1614-15. Accordingly, the continued seizure of appellee was improper unless the subsequent detention can be supported by reasonable suspicion or probable cause.

### B. Probable Cause

The Commonwealth first argues appellee's continued detention did not violate the Fourth Amendment because Trooper Burns had probable cause to believe appellee had committed a felony by using the rental vehicle contrary to the express limitations contained in his rental agreement.

"Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Mazza v. Commonwealth, 16 Va. App. 907, 911, 434 S.E.2d 339, 342 (1993) (citations omitted). "In determining whether probable cause exists courts will test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control." Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976) (citation omitted).

Code § 18.2-102 provides:

> Any person who shall take, drive or use any animal, aircraft, vehicle, boat or vessel, not his own, without the consent of the owner thereof and in the absence of the owner, and with intent temporarily to deprive the owner thereof of his possession thereof, without intent to steal the same, shall be guilty of a Class 6 felony. . . . Any person who assists in, or is a party or accessory to, or an accomplice in, any such unauthorized taking, driving or using shall be subject to the same punishment as if he were the principal offender.

The Commonwealth argues that because Guagliardo was not an authorized user under the rental agreement and the vehicle was being driven outside the permitted geographic area, Trooper Burns had probable cause to believe both men were violating Code § 18.2-102. The Commonwealth specifically relies on Overstreet v. Commonwealth, 17 Va. App. 234, 435 S.E.2d 906 (1993), which held "that where an act violates the specific scope or duration of consent to use a vehicle, a trespassory taking contemplated by Code § 18.2-102 occurs." Id. at 238, 435 S.E.2d at 908.

During his investigation, Trooper Burns reviewed the rental agreement and discussed the discrepancies with appellee, specifically advising him that he was the only authorized driver and that the vehicle could not be driven outside New York, New Jersey, and Pennsylvania. Trooper Burns also confirmed there was no complaint from the vehicle's owner and that the date of the stop was within the rental period. After concluding the traffic stop by issuing Guagliardo a written warning for speeding and returning his documents, Trooper Burns asked appellee to step out of the passenger seat because he would need to drive in accordance with the rental agreement and then returned appellee's driver's license.

Trooper Burns clearly had concluded his investigation into any unauthorized use of a vehicle offense and ultimately decided not to make any arrest based upon the probable cause the Commonwealth now argues existed. Given that Trooper Burns instructed appellee to drive in

- 23 -

accordance with the rental agreement, electing not to issue a citation, any investigation into the unauthorized use of a vehicle was clearly concluded without an arrest at the time Trooper Burns requested appellee's consent to search the vehicle and subsequently detained him until the drug dog arrived. Likewise, the circuit court made a finding of fact that at the time Trooper Burns issued the warning for speeding and told appellee to drive pursuant to the rental agreement, Trooper Burns indicated that he was "not going to take any more action on [the unlawful use of a vehicle]. [Trooper Burns] indicate[d] that he ha[d] completed everything."

Nevertheless, as appellee turned to walk back to the car, Trooper Burns asked about contraband in the vehicle and then requested appellee's consent to search the vehicle. Appellee did not consent and then asked Trooper Burns if he was free to leave. Trooper Burns responded that appellee was not free to leave and directed both men to stand on the shoulder of the road and wait for the drug-sniffing dog to arrive.

Whether probable cause to arrest appellee may have existed at any earlier point is immaterial to whether appellee could be further detained and the vehicle searched after he refused to consent to such a search. Even assuming probable cause existed to charge appellee with the unauthorized use of a vehicle, probable cause to arrest appellee does not automatically translate into probable cause to search the vehicle, especially when no arrest has actually taken place and there is no probable cause to believe the vehicle contained evidence of the unauthorized use of a vehicle offense. See Cunningham v. Commonwealth, 49 Va. App. 605, 613, 643 S.E.2d 514, 518 (2007) (holding "the existence of probable cause to arrest an individual does not *ipso facto* give rise to probable cause to search"). Simply put, there is no "search incident to probable cause to arrest" exception to the Fourth Amendment warrant requirement.

C.  Reasonable Suspicion

The Commonwealth alternatively asserts that the continued detention of appellee was justified because Trooper Burns developed reasonable suspicion that appellee was involved in criminal activity, based upon Trooper Burns's observations before the traffic stop and the additional information he learned during the course of the stop.  I disagree.

Pursuant to Terry v. Ohio, 392 U.S. 1 (1968), "[i]f a police officer has reasonable, articulable suspicion that a person is engaging in, or is about to engage in, criminal activity, the officer may detain the suspect to conduct a brief investigation without violating the person's Fourth Amendment protection against unreasonable searches and seizures."  McGee v. Commonwealth, 25 Va. App. 193, 202, 487 S.E.2d 259, 263 (1997) (en banc).  The justification for detaining the individual need not rise to the level of probable cause, but must be more than an "inchoate and unparticularized suspicion or 'hunch.'"  Terry, 392 U.S. at 27.

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

Alabama v. White, 496 U.S. 325, 330 (1990).

When making a determination of whether reasonable suspicion existed, "the totality of the circumstances — the whole picture — must be taken into account.  Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity."  United States v. Cortez, 449 U.S. 411, 417-18 (1981).  When a court reviews whether an officer had reasonable suspicion, it must view the totality of the circumstances and view those facts objectively through the eyes of a reasonable police officer with the knowledge, training, and experience of the investigating officer.  Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989).  If, however, after

considering these factors, the court concludes that the officer's concern was "more an inchoate and unparticularized suspicion or 'hunch,' than a fair inference in the light of [the officer's] experience, [it] is simply too slender a reed to support [a search or seizure]." Reid v. Georgia, 448 U.S. 438, 441 (1980) (internal quotation marks and citation omitted).

Based upon his training and experience, Trooper Burns testified that he looks for certain indicators during a traffic stop to determine whether criminal activity is afoot including: the behavior of the subjects such as nervousness and conflicting stories, the presence of an excessive number of air fresheners and masking agents, multiple cell phones, fast-food wrappers, packaging indicating traveling great distances without stopping, and the use of a rental car. In the present case, the Commonwealth claims that the men's nervous behavior, the conflicting itineraries, and the unauthorized use of the rental car provided Trooper Burns with reasonable suspicion the men were involved in criminal activity.

However, because we view the evidence in a light most favorable to appellee as the prevailing party, we must grant all reasonable inferences fairly deducible from that evidence. See Commonwealth v. Holloway, 9 Va. App. 11, 20, 384 S.E.2d 99, 104 (1989). Viewed in such a light, the record indicates that the circuit court rejected Trooper Burns's description of the men's behavior as "excessively nervous," after viewing the police car's dashboard camera video, concluding that Guagliardo looked "possibly tired." The record also establishes that although Guagliardo initially told Trooper Burns that the men had come from Myrtle Beach, South Carolina while appellee stated they had been near Atlanta, Georgia, Guagliardo later volunteered to Trooper Burns that the men had also been in Georgia. Therefore, aside from the fact that appellee exercised his right to refuse to consent to a search, the Commonwealth is left merely with the fact that Guagliardo was not an authorized driver pursuant to the rental agreement and the men were driving the rental car outside the permitted geographic area.

As already noted, Trooper Burns had completed his investigation into that offense. Trooper Burns testified that he had never arrested anyone for unauthorized use of a motor vehicle based solely on a violation of a rental agreement and had no plan to do so on this occasion. Moreover, as the Commonwealth conceded at oral argument, the use of a drug dog would neither confirm nor dispel any suspicion regarding any unauthorized use of the vehicle. Accordingly, I conclude, as the circuit court did, that these facts alone, at most, constitute a "hunch" that appellee and his companion may be involved in criminal activity and simply do not rise to the level of reasonable, articulable suspicion to justify detaining appellee beyond the completion of the traffic infraction investigation.

For all of the foregoing reasons, I conclude that the Commonwealth has properly perfected this appeal. However, I also conclude that the continued detention of appellee was not justified by either probable cause that he had committed a crime or reasonable suspicion to believe that appellee was engaged in criminal activity. Therefore, I would affirm the circuit court's decision to suppress the evidence in this case and remand it to that court for further proceedings consistent with this analysis.