### Richmond

CARROLL EUGENE TURNER, JR.

V.

COMMONWEALTH OF VIRGINIA

December 2, 1983.

Record No. 822215.

Present: All the Justices.

*J. Murrell Daniel* for appellant.
*Robert B. Condon, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

Carroll Eugene Turner, Jr., was tried by a jury and convicted of operating "an illegal gambling enterprise, activity or operation" in violation of Code § 18.2-328. On appeal, Turner contends, among other things, that the evidence was insufficient to prove he was an "operator" as that term is defined in the gambling statute. We agree with Turner and will reverse his conviction.

Turner's arrest resulted from an undercover surveillance operation conducted by the Lynchburg Police Department in 1981. Turner was observed frequenting locations where the police suspected gambling activities. On one occasion, he was seen exchanging money. On another occasion, he and another person were seen checking papers and counting money, which items were then observed being turned over to Turner. The undercover operation led to the issuance of search warrants for Turner's person and for a certain building thought to be the headquarters of the gambling operation.

The officer sent to search Turner found him on the street standing near the door of a car talking to a woman seated in the car. As the officer approached, Turner walked to the rear of the car where the officer observed him dropping pieces of paper on the ground. The officer picked up the pieces of paper, which, upon later analysis, were found to be numbers racket betting slips. When Turner was searched, he was found in possession of cash and a large sheet of paper with numbers written on it.

An exact duplicate of the large sheet of paper found on Turner was found at the suspected gambling headquarters. In addition, the search of the building turned up another slip of paper that bore Turner's fingerprint.

An F.B.I. Special Agent testified on behalf of the Commonwealth as an expert in numbers operations. He examined the documents taken from the building and from Turner, and testified that in his opinion they constituted records of a gambling operation. He also testified that the documents found on Turner showed that he was "[a]t least" a "pick up man" or "bagman." Significantly, despite the suggestion raised in the agent's testimony that Turner was more than a bagman, there was no evidence that he was anything other than a bagman.

The agent defined the term "bagman" in his description of a typical numbers operation.[1] He said such an operation is carried on as follows: The most visible person in the operation is the "writer." This person moves freely about the streets collecting bets and writing wagering slips. A "bagman" or "pick up man" is the person who picks up from various writers the wagering slips prepared on the day's betting. He is a messenger who is often paid a fixed salary. The "bagman" turns the wagering slips over to a "controller." The "controller" turns the wagering slips over to the "heart of the operation": the numbers office, bank, or clearing-house. The numbers bank is where all the wagering slips from throughout the enterprise are processed. The numbers bank keeps track of all the betting. According to the Special Agent, in addition to the hierarchy he described, a numbers operation might also have a financial backer who is called on to help pay off "big hits."

Although Turner made three assignments of error we are of opinion that his first assignment — that the evidence was insufficient to convict him of being an operator within the meaning of the statute — is case dispositive. Therefore, we will not address the other assignments of error.

In order to dispose of this case, we must construe the statute under which Turner was convicted. Several important principles come into play when any court construes legislative enactments. First and foremost among these principles is that the primary objective of statutory construction is to ascertain and give effect to legislative intent. *Tiller* v. *Commonwealth,* 193 Va. 418, 69 S.E.2d 441 (1952). A related principle is that the plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, or strained construction. *See Tiller* v. *Commonwealth, supra.* Finally, because the statute in question is penal in nature, it must be strictly construed against the state and limited in application to cases falling clearly within the language of the statute. With these principles firmly in mind, we proceed to our analysis.

Though Turner was convicted under Code § 18.2-328, the focus of our analysis is upon Code § 18.2-325 which defines the word "operator," a term crucial to the offense defined in Code § 18.2-328:

---

[1] This type gambling enterprise is also discussed in *Board* v. *City of Roanoke,* 180 Va. 21, 21 S.E.2d 730 (1942).

> An *operator* includes any person, firm or association of persons, who *conducts, finances, manages, supervises, directs or owns* all or part of an illegal gambling enterprise, activity or operation.

Code § 18.2-325(3) (emphasis added). Significantly, the Commonwealth does not contend that Turner financed, managed, supervised, directed, or owned all or part of the numbers operation the investigation disclosed. Instead, the Commonwealth's entire case against Turner is based on the contention that the evidence showed he *conducted in part* the business of the numbers operation. In essence, the Commonwealth reads the word "conducts" to mean "engages in" or "participates in." We think the Commonwealth's position is at odds with the readily discernible legislative intent.

There are at least three ways to ascertain the legislative intent concerning this statute: (1) by adopting the usual meaning of the word "conduct," (2) by applying the meaning of the word "conduct" as it relates to the other words listed in Code § 18.2-325 and italicized above, and (3) by analyzing Code § 18.2-328 along with other statutory provisions with which it is *in pari materia.* By every approach, the evidence adduced against Turner is insufficient to convict him of the violation with which he was charged.

Webster's Third New International Dictionary, Unabridged (1981) defines "conduct" as meaning to lead as a commander, to have the direction of. Its synonyms are manage, control, and direct. Manifestly, the word "conduct" connotes leadership and control. It contemplates the person in charge. It in no way suggests the role of a mere employee, participant, or helper. Thus, the Commonwealth's reliance upon the word "conduct" as the basis of Turner's conviction is misplaced. There was no proof that Turner was in command of the operation or that he led the operation or controlled it.

Nor can any of the other words listed in Code § 18.2-325 serve as the basis for Turner's conviction. This is so because the maxim *noscitur a sociis,* which translates "it is known from its associates," provides that the meaning of a word takes color and expression from the purport of the entire phrase of which it is a part, and it must be read in harmony with its context. We already have seen that the word "conduct," standing alone, connotes command.

The other words in the series are to the same effect.[2] To "finance" is to raise or provide funds or capital for, to provide with necessary funds in order to achieve a desired end. To "manage" is to control and direct. Its synonyms are conduct and administer. To "supervise" is to coordinate, direct, and inspect; to oversee with the powers of direction and decision. To "direct" is to regulate the activities or course of; to guide and supervise. Its synonyms are administer and conduct. To "own" is to have or hold as property, to possess. When considered together, the verbs listed in Code § 18.2-325 make crystal clear that the statute is aimed at the puppeteer, the person in charge, or, in the words of the Commonwealth in oral argument, "Mr. Big." The evidence failed to show that Turner was in charge. If anything, the evidence showed that Turner was a bagman and that bagmen are not always essential to an illegal gambling operation.

Nor can Turner's conviction be upheld on the basis of the phrase "all or part of" which is found in the statute. That phrase is intended to bring within the sweep of the statute a co-commander, co-leader, or co-manager. It is not intended as a mechanism for bootstrapping a defendant who played no leadership role in the operation into one who did. The phrase simply means that where there is proof that a defendant played even a partial leadership role in the illegal gambling enterprise then he can be convicted under Code § 18.2-328. Here, the Commonwealth's evidence fails to prove that Turner partly conducted, partly financed, partly managed, partly supervised, partly directed, or partly owned the gambling operation.

That the legislature intended for Code § 18.2-328 to apply only to a certain class of criminals, which, on the evidence adduced, does not include Turner, can be better understood upon an analysis of the entire statutory scheme relating to gambling. The Code section under which Turner was convicted is *in pari materia* with several other provisions on gambling. This relationship calls into play the rule of construction that statutes relating to the same subject should be read and construed together.

In 1975, the General Assembly enacted a comprehensive statutory scheme aimed at combatting illegal gambling. Those statutory provisions are contained in Title 18.2, Chapter 8, Article 1,

---

[2] All the succeeding definitions are from Webster's Third New International Dictionary, Unabridged (1981).

Sections 325 through 340.2. Article 1 declares various activities related to gambling to be crimes. Code § 18.2-328, under which Turner was convicted, defines the most serious of several crimes defined in Article 1. Violation of that provision is a felony. However, Article 1 also provides for punishment of persons who knowingly aid, abet, or assist in the operation of an illegal gambling activity. Code § 18.2-330. Violation of that provision is a Class 2 misdemeanor. In addition, Article 1 provides for punishment of persons who gamble illegally. Code § 18.2-326. Violation of that provision is a Class 3 misdemeanor. It is plain from the statutory scheme that the General Assembly intended to establish a hierarchy of criminal activity and gradations of punishment for the various violations.

The most severe punishment is reserved for the person who is, in whole or in part, in charge of the illegal gambling operation, that is, "Mr. Big." The next level of punishment is reserved for people who work for and with "Mr. Big": people who aid in the running of the operation but who lack the element of being in charge, either in whole or in part. Finally, the least severe punishment is reserved for the illegal gambler. The General Assembly has provided a rational, finely-tuned approach to punishment for gambling. It would throw the statutory scheme into disarray for this Court to rule that Code § 18.2-328 is intended to punish activities such as those proved against Turner.

The federal cases cited by the Commonwealth in support of its reading of Code §§ 18.2-325 and -328 cannot change the conclusion reached here because the federal statute, though similar, is not identical to the Virginia enactment. And, as we stated in *N. & W. R. Co.* v. *Virginian R. Co.,* 110 Va. 631, 647, 66 S.E. 863, 868 (1910): "Decisions rendered in other jurisdictions upon statutes more or less similar, but not identical in terms with our own, cannot control the plain and unambiguous terms of our statute law."

Accordingly, the judgment will be reversed and the case remanded for a new trial on a lesser-included offense if the Commonwealth be so advised.

*Reversed and remanded.*

COCHRAN, J., dissenting.

I would affirm the conviction of Turner as the operator of an illegal gambling enterprise, activity or operation in violation of Code § 18.2-328. As defined in Code § 18.2-325, an operator includes one who conducts part of such a proscribed endeavor.

The evidence shows conclusively that Turner was engaged in the illegal gambling enterprise known as "numbers". According to the F.B.I. Special Agent who testified as an expert witness, the betting slips, sheet containing numbers, and cash found on Turner established that he was "[a]t least" a "pick up man" or "bagman" in a numbers operation. In a typical numbers activity a "bagman" picks up wagering slips from the "writer", who writes the slips and collects the bets, and delivers them to a "controller", who turns them over to the gambling office for processing. While the expert conceded that bagmen are not always essential to a numbers operation, it is apparent that someone picks up numbers slips and has them processed or there is no numbers operation. Whether the "bagman", the "writer", or the "controller" performs this function is of no consequence. Undoubtedly, the same person could write numbers slips, collect bets, and deliver the slips and cash to the office, or in a large operation, these functions might be spread among various persons.

Whether Turner was no more than a "bagman" or was in a more responsible, higher echelon of the numbers operation, he was conducting the part of the business assigned to him. He was an integral member of the team. While there is no evidence that he was the owner, the chief executive, or even one of the lesser leaders, he was performing important duties in the business routine.

I do not agree that the statute reflects a legislative intent to apply only to those in charge of a numbers operation. I agree that the statute is not intended to apply to those who participate or engage in a numbers operation merely by purchasing chances. Such bettors come within the purview of Code § 18.2-326. In my view, however, the statute was intended to apply, and does apply, to each person performing any part of the business of accepting money from bettors, issuing numbers slips, recording wagers, and paying winning gamblers. Code § 18.2-330, applicable to those who knowingly aid, abet, or assist in the operation of a gambling activity, does not apply, in my opinion, to one who is employed as a "bagman" to promote the business of his employer. Turner was employed not in a charitable enterprise but in a profit-making

business prohibited by law, and he should be held accountable for his conduct.

CARRICO, C.J., joins in dissent.