## CIRCUIT COURT OF FAIRFAX COUNTY

Vegas Time Associates, Inc.

v.

John E. Granfield

Case No. (Chancery) 106717

Vegas Casinos Management

v.

Commonwealth of Virginia et al.

Case No. (Chancery) 106718

July 11, 1988

By JUDGE RICHARD J. JAMBORSKY

These matters are before the court on two separate motions for declaratory judgment filed by each of the complainants. They seek the entry of a decree declaring that the simulated blackjack entertainment services which they provide do not constitute "illegal gambling" as defined by Virginia Code § 18.2-325(1) (Repl. Vol. 1982). In the alternative, Complainants ask the Court to find that, in the event such services do constitute illegal gambling, they are excepted by the first proviso of Virginia Code Section 18.2-325(2)(b). The Court concludes for reasons that follow that Complainants' simulated blackjack services do not constitute "illegal gambling" as that activity is defined by § 18.2-325(1).

In order to properly rule on Complainants' motions for declaratory judgment, the Court has to construe the

statutes which Complainants challenge. In so doing, the Court must apply sound rules of statutory construction. The primary duty of the Court is to ascertain and give effect to the intent of the legislature. *Turner v. Commonwealth*, 226 Va. 456, 459 (1983). In order to do that, the Court must give preference to the plain, obvious, and rational meaning of the statute rather than any curious, narrow or strained construction. *Id.* Although certain statutes may stand alone, others are so interrelated with other sections relating to the same subject that they all should be read and construed together. *Id.* at 461. Finally, when penal statutes are called into question, the Court must strictly construe them against the Commonwealth and limit them to cases falling squarely within the statutory language. *Id.* at 459. This rule applies even in the civil contest when the Court is asked to enter a declaratory judgment involving the interpretation of a criminal statute. *See Bingham, Ltd. v. United States*, 724 F.2d 921, 925 (11th Cir. 1984). With these principles in mind, the Court now turns to the issues presented by counsel.

Complainants are engaged in the business of providing simulated blackjack entertainment in local commercial hotel establishments. With few exceptions, Complainants have attempted to and have largely succeeded in providing entertainment which is virtually identical to that provided in conventional Las Vegas casinos. The game's participants, including the "house," play their cards under the same rules and using the same methods as those who would play in Las Vegas. The game is played on a blackjack table using cards, chips, a dealer shoe and discard holder. The dealer, a person employed by one of the complainants, shuffles the cards which are then cut by one of the players. The cards are then placed in the dealer shoe and randomly dealt to each of the players.

The only significant differences between Complainants' game and Las Vegas casino blackjack are the manner in which a prospective customer acquires the right to play the game and the benefit he receives in the event he wins. To play Complainants' game, a customer must rent a minimum of ten chips for the sum of five dollars. The chips are issued solely to enable the customer to play the game; they have no designated monetary value and are not redeem-

able. Although a player may rent additional chips at any time and win more chips by beating the house, all chips acquired during the course of the business day must be surrendered when the player leaves the table. He receives nothing of value upon surrender of his chips; the only benefit he ever receives is the right to play additional games if he wins and the amusement associated with his participation.

Before playing, each customer is verbally instructed as to the rules of the game and the function of the chips. They are also informed that gambling is not permitted. In addition, each player receives a card which similarly describes the function of the chips and is exposed to a number of placards with similar provisions in large print. These placards are posed in conspicuous places around the room in which the entertainment is provided.

The Commonwealth's Attorney and the Chief of Police have informed Complainants and the establishments with which they have contracts that, under the circumstances described above, the simulated blackjack constitutes "illegal gambling" as defined by § 18.2-325(1). They assert that Complainants' game satisfies all of the elements necessary to establish illegal gambling, namely price, chance and prize. They argue that prospective players must pay at least five dollars to receive chips which are used to play a game of chance in order to try to acquire the right to play more games at no additional cost. In essence, Defendants contend that Complainants' customers are gambling that they will receive more amusement for their money, a benefit which satisfies the prize element of § 18.2-325(1).

Complainants dispute this interpretation. They argue that the game does not satisfy the prize element because the players can win nothing of value. The only things which they can win are additional chips merely entitling them to play more games. They suggest that the right to play additional games is not a tangible object of worth and is therefore not a thing of value as contemplated by the prize element of § 18.2-325(1).

At first glance, Complainants' simulated blackjack appears to constitute "illegal gambling" as that phrase is defined by § 18.2-325(1). That section provides in pertinent part that "illegal gambling" is "[t]he making,

placing or receipt, of any bet or wager in this State of money or other thing of value, made in exchange for *a chance to win a prize, stake or other consideration or thing of value*, dependent upon the result of any game, contest or any other event the outcome of which is uncertain or a matter of chance." Va. Code § 18.2-325(1) (emphasis added). A reasonable and ordinary reading of the plain and *relatively* unambiguous language of this statute standing alone indicates that the player who, by beating the house, wins additional chips conferring upon him the right to play additional games at no extra cost receives a prize or other consideration, if not a thing of value, the acquisition of which is dependent upon a game of chance. As the Commonwealth's Attorney correctly points out, Complainants' customers are, in effect, gambling that they will receive more value for their money by playing more games than their initial rental of chips would otherwise entitle them to play.

Were the Court to accept this construction, Complainants would have it further find that, although their game does constitute illegal gambling under § 18.2-325(1), they are excepted by the first proviso of § 18.2-325(2)(b). While acknowledging that the latter subsection defines the phrase "gambling device," they argue that it incorporates § 18.2-325(1)'s definition "illegal gambling" and applies it to any of the devices listed. They further contend that, by using the words "A gambling device *includes*" in the introductory clause of § 8.2-325(2)(b), the General Assembly intended the definition to be all inclusive (emphasis added). Consequently, Complainants suggest that this Court, like the court in *Newport Enterprises, Inc., t/a Jack's and Vegas Casinos Management v. Virginia Alcohol Beverage Control Board*, 13 Va. Cir. 175 (1988), the only other Virginia decision addressing this issue, should hold that § 18.2-325(2)(b)'s exception applies to § 18.2-325(1).

As a preliminary matter, in order to determine whether the exception upon which Complainants' rely is even applicable, the Court must first determine whether Complainants' game falls within the proviso of § 18.2-325(2)(b). In its pertinent provisions, § 18.2-325(2)(b) provides that:

A gambling device includes . . .

> (b) Any machine, apparatus, implement, instrument, contrivance, board or other thing, including but not limited to those dependent upon the insertion of a coin or other object for their operation, which operates, either completely automatically or with the aid of some physical act by the player or operator, in such a manner that, depending upon elements of chance, it may eject something of value or determine the prize or other thing of value to which the player is entitled; provided, however, that the return to the user of nothing more than additional chances or the right to use such machine is not deemed something of value within the meaning of this subsection . . . .

Va. Code § 18.2-325(2)(b). A straightforward and reasonable interpretation of the plain and unambiguous language of this statute leads to the conclusion that, but for the proviso, Complainants' game would be considered a gambling device. Under the proviso, however, the General Assembly created two exceptions to the classification of something as a "gambling device." Those exceptions exist when the device returns to the user nothing more than either (1) additional chances or (2) the right to use such machine.

The Commonwealth argues, however, that the proviso only creates one exception and that that exception only applies to mechanical devices in their pure form as the legislature's use of the word "machine" connotes. The Commonwealth fails to recognize, however, that the General Assembly elected to use, in the disjunctive, the word "or" which reflects the intention to create two exceptions. Moreover, the Commonwealth's interpretation of the use of the word "machine" is too constrained when read in conjunction with the initial seriatim listing of the generic descriptions of "gambling device." In short, when the subsection is read as a whole, it is evident that the General Assembly intended to use the word "machine" as a shorthand method of restating the original broad definition.

The Court finds that under a plain reading of this statutory language, Complainants' game falls squarely within both exceptions of § 18.2-325(2)(b)'s proviso. Any person who plays Complainants' game and wins is entitled to nothing more than the right to acquire additional chances or the right to use the machine. Since a player can acquire nothing more than what § 18.2-325(2)(b)'s proviso specifies, Complainants' game does not return to the user something of value within the meaning of that subsection. Consequently, Complainants' game is not a gambling device as defined by § 18.2-325(2)(b).

Notwithstanding the fact that Complainants' game is excepted as a gambling device under § 18.2-325(2)(b)'s proviso, the Court is not persuaded by Complainants' argument that the proviso applies to § 18.2-325(1)'s definition of "illegal gambling." As the Commonwealth's Attorney correctly points out, § 18.2-325 is a definitional section. Subsections (1) and (2) define two different concepts; one is "illegal gambling" and the other is "gambling device." Contrary to Complainants' assertion, subsection (2)(b) does not incorporate subsection (1)'s definition of "illegal gambling," nor is there a reason for it to do so. Subsection (2)(b) simply defines what constitutes a "gambling device"; it does not make gambling devices illegal. In fact, under § 18.2-331, that section which specifies under what circumstances the possession of gambling devices is illegal, one can lawfully engage in any of the activities listed therein while using a gambling device unless he "believe[s] or [has] reason to believe" that it is to be used for illegal gambling activity. Va. Code. § 18.2-331 (Repl. Vol. 1982).

There is, however, a more compelling reason to reject Complainants' argument. The first proviso is, by its very terms, limited in application to subsection (2)(b). After defining "gambling device," the subsection provides in pertinent part that "the return to the user of nothing more than additional chances or the right to use such machine is not deemed something of value *within the meaning of this subsection.*" Va. Code § 18.2-325(2)(b) (emphasis added). Consequently, the Court cannot conclude that the General Assembly intended for the first proviso of subsection (2)(b) to provide an exception to the definition of "illegal gambling" under subsection (1).

These conclusions, however, do not end the inquiry. To apply the statutes as interpreted at this juncture in the analysis would require the Court to conclude that Complainants are engaged in § 18.2-325(1) illegal gambling activity by using a device which is not considered to be a "gambling device" under § 18.2-325(2)(b). Certainly it is possible for someone to perform any of the activities described in § 18.2-331 with a device that is not a "gambling device" under § 18.2-325(2)(b), and therefore not be culpable under § 18.2-331, yet still be guilty of illegal gambling by virtue of § 18.2-325(1). However, in a certain narrow class of cases, one in which the instant case squarely fits, such a conclusion would necessarily lead to an absurd result.

As previously discussed, the General Assembly saw fit to except from the definition of "gambling device" those things which only return to the user nothing more than additional chances or the right to use a machine. But, if the Court were to accept the Commonwealth's argument that the receipt of additional chances satisfies the prize element of § 18.2-325(1)'s definition of "illegal gambling," then notwithstanding its current policy, the Commonwealth, if it so chose, could prosecute Beauregard, a fictitious player of pinball and video arcade games, for illegal gambling under § 18.2-235(1), but not for illegal possession or use of a gambling device under § 18.2-311 since such games are not gambling devices under § 18.2-325(2)(b). In short, the Commonwealth would be prosecuting Beauregard for using the machine in the manner in which and for the purpose for which it was designed to be used, a challenge to acquire additional chances or to use the machine. That purpose of function, however, has been expressly recognized as legitimate by the General Assembly and is the reason why the games are exempted from the definition of "gambling device." *See,* Va. Code § 18.2-325(2)(b). To prosecute Beauregard for using a legal machine in the manner in which it was intended to be used under the guise that he is gambling illegally is patently absurd.

The same reasoning applies in the case at bar. As the Court has already determined, Complainants' game is not a "gambling device" because it fits squarely within Section 18.2-325(2)(b)'s proviso. Thus, Complainants or their customers could not be prosecuted for unlawfully

possessing or using a gambling device under § 18.2-331. The Commonwealth, however, suggests that a prosecution under § 18.2-325(1) for illegal gambling would be appropriate because Complainants' customers can win the right to play more games. To accept this position would be absurd because someone would be penalized for playing Complainants' game in order to acquire nothing more than more chances, a purpose for which Complainants' blackjack simulation was originally designed. That purpose has been expressly recognized as legitimate by the General Assembly and is the reason why Complainants' game is not a gambling device under § 18.2-325(2)(b).

Given this anomalous result and considering the rules of statutory construction as discussed by the Court in *Turner v. Commonwealth*, 226 Va. 456 (1983), the Court finds that the General Assembly, by enacting §§ 18.2-325(1), 18.2-325(2)(b) and 18.2-331, intended to exempt from the general gambling laws the use of devices which entitle its players to acquire nothing more than the right to play additional games. To reach a contrary conclusion would render the enactment of § 18.2-325(2)(b)'s proviso meaningless and without practical effect. Indeed, the subsection's definition of gambling device and the exceptions created by its proviso are dependent upon some positive, affirmative action on the part of a device's user. Consequently, to hold that one is engaged in illegal gambling when he uses a device which is not a gambling device and which is used in the manner for which it was intended, the right to receive enjoyment and to attempt to acquire nothing more than the right to play more games, would subvert the intent of the legislature.

For the foregoing reasons, Complainants' simulated blackjack services do not constitute "illegal gambling" as that activity is defined by § 18.2-325(1).