Question Submitted by: The Honorable Chris Kannady, Oklahoma House of Representatives, District 91
2024 OK AG 7
Decided: 04/26/2024
Oklahoma Attorney General Opinions
Cite as: 2024 OK AG 7, __ __

 
 
¶0 This office has received your request for an Attorney General Opinion in which you ask the following questions:
1. May a qualified organization use a third-party electronic raffle platform or software to host a raffle online, to include fulfilling ticket orders, processing payments, and providing a random number generator for raffle entries, without violating , or do those undertakings constitute the conducting of a raffle under the statute?
2. May a salaried employee of a qualified organization conduct a raffle without violating if that employee is not receiving additional compensation for conducting the raffle?
I.
SUMMARY
¶1 A qualified organization may use a third-party electronic raffle platform or software to host a raffle online, to include fulfilling ticket orders, processing payments, and providing a random number generator for raffle entries, without violating . It is this office's opinion that the verb form of "conduct" in section 1051 means the person doing the activity is in a leadership or controlling position. As a result, because the third-party electronic raffle platform or software provider is simply following the directions of a client, the qualified organization, it is not in a leadership position. Therefore, it is not violating the limitation on who can "conduct" a raffle pursuant to Section 1051(A)(4)(b).
¶2 Further, it is this office's opinion that the prohibition on a qualified organization's member receiving compensation in (A)(4)(b) is solely limited to conducting the raffle. In other words, the member of the qualified organization is permitted to receive compensation from the qualified organization as long as the member's participation in conducting the raffle is voluntary and the member's compensation is not directly tied to conducting the raffle.
II.
BACKGROUND
¶3 With limited exceptions, the purchase of "a lot of chance, whether called a lottery, a raffle, or a gift enterprise" in exchange for valuable consideration was prohibited by Oklahoma criminal law until November 9, 2003. ; CRIMES AND PUNISHMENTS--LOTTERIES--CHURCHES, SCHOOLS AND OTHER ORGANIZATIONS, 2003 Okla. Sess. Law Serv. Ch. 202 (S.B. 837) (West). In response to a 1995 Attorney General Opinion, , holding that "casino nights" by non-profit, charitable organizations violated Oklahoma's anti-gambling laws, the Legislature amended to permit raffles by qualified organizations. This law became effective upon the approval of State Question 705 by the voters. Qualified organizations are defined as:
(1) a church,
(2) a public or private school accredited by the State Department of Education or registered by the State Board of Education for purposes of participating in federal programs,
(3) a student group or organization affiliated with a public or private school qualified pursuant to division (2) of this subparagraph,
(4) a parent-teacher association or organization affiliated with a public or private school qualified pursuant to division (2) of this subparagraph,
(5) fire departments,
(6) police departments,
(7) organizations that are exempt from taxation pursuant to the provisions of subsection (c) of Section 501 of the United States Internal Revenue Code, as amended, 26 U.S.C., Section 501(c) et seq., or
(8) an "organization" as such term is defined in paragraph 20 of Section 402 of Title 3A of the Oklahoma Statutes.
(A)(4)(a).
¶4 Since the legalization of charitable raffles in Oklahoma, so-called 50/50 raffles have become a popular method for professional sports teams to raise money for their charitable foundations. A 50/50 raffle is a type of "raffle conducted by a charitable organization whereby moneys collected by sale of raffle tickets are split evenly between the prize winner or winners and the charitable organization after the raffle drawing." N.H. Rev. Stat. Ann. § 287-A:1 (2000); see also N.J. Stat. Ann. § 5:8-51.6 (2020); N.Y. Comp. Codes R. & Regs. tit. 9, § 4620.22 (2022); and Mont. Admin. R. 23.16.2610 (2019).
¶5 With the large crowds present at professional sporting events, it makes sense that qualified organizations associated with professional sports teams, such as the Thunder Community Foundation, would seek to engage third-party electronic raffle platforms or software providers to help with the logistics of the raffle. Based on information provided to this office, it is understood that these third parties typically provide tools for the raffle such as credit card processing, producing electronic and paper tickets, and e-mailing receipts to participants. Further, they provide a random number generator to select the winning ticket and analytical support to help the qualified organization make decisions to maximize ticket sales.
¶6 Based on information provided to this office, it is also understood that the qualified organization's employees or volunteers are the only persons soliciting the purchase of or selling raffle tickets. And the personnel of the qualified organization are the ultimate decisionmaker with respect to all material aspects of the raffle. For example, the qualified organization's personnel determine when the raffle starts, when it ends, and the amount it costs to purchase a raffle ticket. Finally, the qualified organization's personnel select the winning ticket through initiating a random number generator provided by these third parties.
III.
DISCUSSION.
A. The use of a third-party electronic raffle platform or software by a qualified organization to host a raffle online, to include fulfilling ticket orders, processing payments, and providing a random number generator for raffle entries does not violate .
¶7 Subsection A(4)(b) of states that a qualified "organization shall not hire or contract with any person or business association, corporation, partnership, limited partnership or limited liability company to conduct a raffle, to sell raffle tickets or to solicit contributions in connection with a raffle on behalf of the organization." The text of the question presented plus the information provided to this office establishes that the third party is not selling the raffle tickets or soliciting contributions in connection with the raffle. Therefore, the resolution of the question depends on what it means to "conduct a raffle."
¶8 "The fundamental rule of statutory construction is to ascertain and give effect to the legislative intent, and that intent is first sought in the language of a statute." Fanning v. Brown, , ¶ 10, , 845. "The words of a statute will be given their plain and ordinary meaning unless it is contrary to the purpose and intent of the statute when considered as a whole." Welch v. Crow, , ¶ 10, , 603. The Oklahoma Supreme Court "has relied on dictionary definitions to provide the plain, ordinary meaning of terms." Brassfield v. State, , ¶ 8, 544 P.3d 938, 941.
¶9 Merriam-Webster dictionary defines the verb form of "conduct" as "to direct the performance of," "to lead from a position of command," "to direct or take part in the operation or management of," and "to bring by or as if by leading." This dictionary definition of "conduct" establishes that a person must be in a management or leadership position to "conduct" an activity.
¶10 The Virginia Supreme Court came to the same conclusion when it was asked to interpret a criminal statute punishing an individual that "conducts . . . an illegal gambling enterprise, activity or operation." Turner v. Commonwealth, 309 S.E.2d 337, 338 (Va. 1983). There, the court rejected Virginia's argument that the word "conducts" was broad enough to encompass a person that "'engages in' or 'participates in'" an illegal gaming enterprise. Id. Instead, the court held that "the word 'conduct' connotes leadership and control. It contemplates the person in charge. It in no way suggests the role of a mere employee, participant, or helper." Id. at 339. Thus, an individual that "conducts" an activity is the person in charge. He or she is not a mere employee, participant, or helper. One need only think of an orchestra, where there is one conductor directing many performers.
¶11 Based on the information provided to this office, it is understood that the third-party electronic raffle platform or software provider is not the person in charge. The third-party raffle platform or software provider simply takes instructions from its customer, the qualified organization. The third party is, at most, a participant or helper in facilitating the raffle. Therefore, the third-party raffle platform or software provider is not conducting the raffle.
¶12 Accordingly, a qualified organization may use a third-party electronic raffle platform or software to host a raffle online, to include fulfilling ticket orders, processing payments, and providing a random number generator for raffle entries, without violating .
B. A salaried employee of a qualified organization may conduct a raffle without violating as long as that employee's participation in conducting the raffle is voluntary and their compensation is not directly tied to conducting the raffle.
¶13 Subsection A(4)(b) of also provides that "[a]ny raffle conducted by a qualified organization shall be conducted by members of the qualified organization without compensation to any member." The question presented is essentially whether the statement "without compensation to any member" prevents the member from receiving a salary from the qualified organization that is not directly tied to conducting the raffle. The answer to this question is that the member may receive a salary from the qualified organization as long as the salary is not directly tied to conducting the raffle and the member is not receiving an incentive for conducting the raffle. In other words, while a member conducting the raffle may be gainfully employed by the qualified organization, the member's participation in conducting the raffle must be voluntary and unpaid.
¶14 "The primary goal of statutory construction is to ascertain and to apply the intent of the Legislature that enacted the statute." McIntosh v. Watkins, , ¶ 4, , 1096. "Such intent must be gleaned from the statute in view of its general purpose and object." Grimes v. City of Oklahoma City, , ¶ 6, , 723, as corrected (July 8, 2002). When the focus of the interpretation is "on a particular word or phrase in a statute . . ., we are not allowed to ignore the statutory context wherein the particular word or phrase appears." Stricklen v. Multiple Inj. Tr. Fund, , ¶ 19, 542 P.3d 858, 867, as corrected (Jan. 31, 2024).
¶15 Here, (A)(4)(b) is aimed at placing limitations on conducting a raffle. Thus, in this context, the phrase "without compensation to any member" is referring to the act of conducting a raffle. It is not referencing unrelated acts by the member on behalf of the qualified organization.
¶16 Regardless, even if there were an ambiguity in (A)(4)(b), the same conclusion is reached. "Where a statute is ambiguous or its meaning uncertain it is to be given a reasonable construction, one that will avoid absurd consequences if this can be done without violating legislative intent." McIntosh, , ¶ 4, 441 P.3d at 1096.
¶17 As previously explained, only those members in charge of the raffle are considered to have conducted the raffle. It is absurd to conclude that the members trusted by the qualified organization to manage or lead the raffle are precluded from obtaining gainful employment from the qualified organization. The statutory text also bolsters this outcome by authorizing schools, police departments, and fire departments to conduct a raffle--each organization paying its employees. , 51-103; . And, after all, the statute does not say that the individual participating in the raffle must somehow be an "unpaid" employee or require the person to be a "volunteer" non-employee of the organization. Rodgers v. Higgins, , ¶ 18, , 409 ("We should not read into the law that which is not there."). But to remain in compliance with (A)(4)(b), the member's act of conducting the raffle still needs to remain voluntary and without pay.
¶18 Accordingly, a salaried employee of a qualified organization may conduct a raffle without violating as long as that employee's participation in conducting the raffle is voluntary and their compensation is not directly tied to conducting the raffle.
¶19 It is, therefore, the official Opinion of the Attorney General that:

1. The use of a third-party electronic raffle platform or software by a qualified organization to host a raffle online, to include fulfilling ticket orders, processing payments, and providing a random number generator for raffle entries does not violate .
2. A salaried employee of a qualified organization may conduct a raffle without violating as long as that employee's participation in conducting the raffle is voluntary and their compensation is not directly tied to conducting the raffle. 

These determinations are limited to the text of the question and the general information provided to this office. This opinion does not determine whether a raffle is lawful as applied to a particular fact situation, and it shall not be construed in such a manner. Unlike a court, an Attorney General Opinion does not consider or make rulings on factual issues; Attorney General Opinions are limited to questions of law. (A)(5); ; .
 
GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
GARRY M. GASKINS, II
SOLICITOR GENERAL
FOOTNOTES
 Oklahoma Senate, (Nov. 30, 2024, 12:38 AM), https://oksenate.gov/press-releases/raffles-now-legal-non-profit-organizations#:~:text=Sen.,Gaming%20 and%20illegal%20in%20Oklahoma.
 Id.
 See e.g., NBA, https://www.nba.com/thunder/raffle (last visited Apr. 26, 2024); and OKC, https://www.milb.com/oklahoma-city/community/50-50-raffle (last visited Apr. 26, 2024).
 Black's Law Dictionary's definition of "conduct" is not helpful because it defines the noun form of "conduct." Conduct, Black's Law Dictionary (11th ed. 2019).
 Conduct, Merriam-Webster, https://www.merriam-webster.com/dictionary/conduct?utm_ campaign=sd&utm_medium=serp&utm_source=jsonld.
 This office's prior opinions on the acceptance of second-chance lottery promotion entry forms online () and the acceptance of pari-mutuel wagering on horse races online () are not implicated. Unlike a lottery () or horse racing (, 205.6a, 205.7), there is nothing in Oklahoma law limiting the location where raffle tickets can be purchased. (A)(4). Regardless, was rendered obsolete by the passage of , which expressly authorized online second-chance lottery promotions.