COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Chaney and Frucci
Argued by videoconference

ISMAEL LOPEZ IZAGUIRRE

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1836-23-4                      JUDGE RICHARD Y. ATLEE, JR.
                                                    MAY 6, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Judith L. Wheat, Judge

Brandon R. Shapiro (Shapiro Law, PLLC, on brief), for appellant.

Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
Attorney General; Collin Chayce Crookenden, Assistant Attorney
General, on brief), for appellee.


Following a jury trial, the trial court convicted Ismael Lopez Izaguirre of four counts of

aggravated sexual battery. On appeal, Izaguirre raises three issues. He contends that the trial court

admitted a recording and transcript of a police interview in violation of his Sixth Amendment right

to confrontation. He also argues that the evidence was insufficient to prove his identity as the

perpetrator. Finally, Izaguirre argues that evidence was insufficient to support his conviction for

aggravated sexual battery because he did not touch "material directly covering" the victim's

intimate parts as required by Code § 18.2-67.3. Finding no merit in any of these claims, we affirm.

I.  BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Meade v. Commonwealth*,

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

74 Va. App. 796, 802 (2022) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).  In addition, "we regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence."  *Id.* (quoting *Gerald*, 295 Va. at 473).

In 2018, Izaguirre married Jacqueline Parada and began living with Parada[1] and Y.M., her eight-year-old daughter, in a two-bedroom apartment.  Later, Izaguirre, Parada, and Y.M. moved to another two-bedroom apartment where Izaguirre and Parada had two additional children in common.  In each of these apartments, Izaguirre and Parada shared one bedroom and Y.M. had the other.

A.  *Izaguirre's Touching of Y.M.'s "Private Parts"*

While living with Parada and Y.M., Izaguirre inappropriately touched Y.M. on more than one occasion.  On each occasion, he touched either Y.M.'s vagina or buttocks.  He also touched Y.M.'s breasts more than once.

The first touching incident happened when Y.M. was eight years old and she was sleeping in her bedroom at night.  Only Izaguirre, Parada, and Y.M. were in the apartment and the front door, which was the only entranceway, was locked.  The windows in the apartment also were closed, but Y.M.'s bedroom door was open.  On that occasion, while she was lying on her stomach on her bed with her "butt . . . up in a way," she "felt something touch" her vagina.  Y.M. was only wearing underwear and a T-shirt and the touch was to her underwear.  She did not see the person who touched her, and this person did not speak, but she knew it was Izaguirre because she "knew the feeling of his hand."  When Izaguirre touched Y.M., he rubbed her vagina for a few seconds.  Upon being touched, Y.M. "moved a little bit" and then she heard footsteps running out of her room.  The next day, Y.M. told Parada about what Izaguirre had done.

---

[1] Although Jacqueline Parada changed her name to Jacqueline Parada Izaguirre, her former last name will be used to distinguish her from the defendant.

The next incidents of touching occurred when Y.M. was 11 years old. On one occasion, Izaguirre came into her bedroom in the early morning hours while she was not fully asleep and rubbed her buttocks. This time, she wore underwear under a pair of shorts and the rub was "[a]bove the shorts." As before, Izaguirre said nothing, but Y.M. knew it was Izaguirre because her eyes were "open in a way" and he was facing her. On two other occasions, Izaguirre "touched [her] butt again" while she was sleeping on a couch in their apartment.

While Izaguirre was living with Parada and Y.M., he drove Y.M. to school "[a]lmost all the time" with no one else in his vehicle. He also drove her to stores near their apartment. On one of these occasions, Izaguirre asked Y.M. if she wanted to touch him and she said "no." On another occasion, when Y.M. was almost 12 years old, he parked his vehicle in an unknown location where there were trees and houses, "but the houses' lights were off." He then touched her vagina and kissed her, inserting his tongue in her mouth. Y.M. told Izaguirre to stop and said, "[d]on't touch me." Yet, this kissing occurred "many times." At another time, while in his vehicle at the same unknown location with the houses and trees, Izaguirre made her feel his penis through his pants by grabbing her arm and forcing it onto his pants.

Sometimes when Izaguirre inappropriately touched Y.M., Parada was out of the apartment. On one such occasion, Izaguirre went into Y.M.'s room after Parada left and he told Y.M. to go into his room. Izaguirre was not wearing pants or a shirt. After a few minutes, Izaguirre began touching Y.M.'s "private part."

Besides the incidents of inappropriate touching, Izaguirre asked Y.M. to promise that she would let him touch her when she turned 14 years old. Using his cell phone, he also made a recording of this request.[2]

---

[2] As translated and transcribed, Izaguirre's recorded words were the following: "[Y.M.] has promised me that when she's 14 years old, she's going to let me touch her, and we're going to a really nice place, just her and I; that's when she's 14. [Y.M.], do you promise me?"

B. *Police Interview of Izaguirre*

After receiving a referral from Child Protective Services regarding Y.M.'s sexual abuse, Arlington County Police Detective Christopher Mulrain arranged for a recorded interview of Izaguirre at the police department. Several detectives participated in the interview, and the entire interview was recorded. Detective Joanbel Echenique,[3] a fluent Spanish speaker, conducted much of the interview in Spanish. The interview was transcribed and translated into English, and it was later admitted into evidence at Izaguirre's trial.

During the interview, Izaguirre admitted that he started touching Y.M. about a year earlier. He stated that he sexually touched Y.M. "four or five times." On these occasions, he touched Y.M. on her "pompis," which was his word for her buttocks. And whenever he touched Y.M.'s buttocks, he admitted that she shouted, "Stop! Don't touch my pompis!"

Later, Izaguirre also admitted that he touched Y.M.'s vagina in the car. He admitted that he "intentionally" touched Y.M.'s vagina, but he insisted that it was "like a joke, like a game." When the detective told Izaguirre that the police knew that he had touched Y.M.'s vagina multiple times, Izaguirre protested, saying "I agree that I've touched her buttocks like five times, and that that time I did it intentionally," but he initially insisted he had not touched her vagina. Izaguirre later stated that he touched Y.M.'s vagina twice, but not "more than twice."

During the interview, Izaguirre stated that he regretted touching Y.M.'s vagina and buttocks and that he was just trying to "tease her." When asked how he would feel if a man abused his biological daughter when she was eight years old, Izaguirre stated that he would feel that the man is "abusive, that he doesn't have dignity as a man," and he admitted that he "fe[lt] that way." Izaguirre also stated that he felt like "garbage" because he abused Y.M. He "did it

---

[3] The transcription identified Echenique as "Detective Chelin," but this was a phonetic transcription, and the parties agreed that it was Echenique.

. . . because of stupidity." When asked why he abused Y.M., Izaguirre stated that "she's curvy, she has a big backside . . . maybe that caught my attention to touch her." Detective Echenique then said, "[b]ut you did it because you like it, and you just explained . . . [that] her buttocks is a bit bigger now." Izaguirre responded, "Yes."

C. *Motion in Limine and Jury Trial*

Before trial, Izaguirre filed a motion *in limine* seeking to exclude the Spanish portion of the interview because Detective Echenique was not going to testify and no other detective was present in the room when Echenique conducted the interview. He argued that this portion of the interview constituted hearsay and a violation of the Confrontation Clause. The trial court denied the motion, finding that the statements of the officers were not evidence and that there was no Confrontation Clause issue. The trial court noted that "the jury [could] simply be instructed that they are to consider the statements of Detective Echenique solely for purposes of determining [Izaguirre's] response[s] to those questions."

At the conclusion of the Commonwealth's evidence, Izaguirre moved to strike the evidence. He argued that the evidence was insufficient to prove the identity of the person who touched Y.M.'s vagina while she slept because she did not see the individual. Izaguirre also argued that there was insufficient evidence to prove an aggravated sexual battery when Izaguirre touched Y.M.'s buttocks when she was 11 years old because the touching was "above her shorts" and underwear and it did not meet "the definition of material directly covering" intimate parts. The trial court denied the motion to strike. Izaguirre did not present evidence, and he renewed his motion to strike, which the trial court denied as well.

The jury convicted Izaguirre of four counts of aggravated sexual battery. The jury members specifically found that one of the instances of aggravated sexual battery was when

Izaguirre "touched her vagina" in an apartment and the other three were when Izaguirre "touched her buttocks" in a different apartment.[4] Izaguirre now appeals.

## II. ANALYSIS

A. *The trial court did not err in admitting the interview and transcript of the interview.*

Izaguirre first argues that the trial court erred by admitting the portion of the recording and transcript of the interview that contained Detective Echenique's statements. He contends that the detective's questions, accusations, and false assertions constituted inadmissible testimonial hearsay in violation of the Sixth Amendment. He correctly notes that for evidence to be inadmissible under the Confrontation Clause, it must be both hearsay and testimonial in nature. Because we agree with the trial court that Detective Echenique's statements are not hearsay, we need not address whether they are testimonial.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Barnes v. Commonwealth*, 33 Va. App. 619, 626 (2000) (quoting *Crews v. Commonwealth*, 18 Va. App. 115, 118 (1994)). "A reviewing appellate court can conclude that 'an abuse of discretion has occurred' only in cases in which 'reasonable jurists could not differ' about the correct result." *Jones v. Commonwealth*, 71 Va. App. 597, 603 (2020) (quoting *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016)). "'[B]y definition,' however, a trial court 'abuses its discretion when it makes an error of law.'" *Id.* (alteration in original) (quoting *Coffman v. Commonwealth*, 67 Va. App. 163, 166 (2017)). Thus, "[t]he abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Helmick Fam. Farm, LLC v. Comm'r of Highways*, 297 Va. 777, 794 (2019) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)).

---

[4] The jury made these findings on the verdict forms.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). "Hearsay is generally inadmissible unless it falls within an exception." *Chenevert v. Commonwealth*, 72 Va. App. 47, 54 (2020). But "if a statement is not offered for its truth, it is not excludable as testimonial hearsay because it is not hearsay at all." *Bennett v. Commonwealth*, 69 Va. App. 475, 489 (2018). For this reason, statements offered to give context to party admissions or to explaining the conduct of the person to whom it was said are not hearsay and are admissible. *Swain v. Commonwealth*, 28 Va. App. 555, 560 (1998); *Weeks v. Commonwealth*, 248 Va. 460, 477 (1994). Thus, "[d]etermining whether a statement is offered to prove the truth or falsity of the matter asserted requires an analysis of the purpose for which the statement is offered into evidence." *Swain*, 28 Va. App. at 559.

In this case, we find that the trial court did not err by admitting the recording and transcript of Detective Echenique's statements during Izaguirre's interview. The trial court concluded that the detective's statements were "not evidence." We construe this to mean that the trial court found that the statements were not offered for the truth of the matter asserted and, therefore, were not hearsay. The record supports this finding. Detective Echenique's statements, questions, and accusations provided the necessary factual context for understanding Izaguirre's answers, some of which were incriminating responses and admissions. *See Jones*, 71 Va. App. at 608 (finding a child victim's recorded telephonic statements accusing the defendant of kissing her and "mess[ing] with [her] privates" were not hearsay because they were not offered for their truth but as statements offered to provide context for the defendant's admissions of sexual abuse). In some instances, particularly when the detective's question solicited a yes or no answer, Izaguirre's answer would have been meaningless without the question. Accordingly, we find that the trial court did not err by admitting the recording and transcription of the interview.

B. *The evidence was sufficient to identify Izaguirre as the person who touched Y.M.*

Next, Izaguirre argues that the evidence was insufficient to prove that he was the person who touched Y.M.'s buttocks when she was eight years old. He contends that Y.M.'s testimony that she could tell it was Izaguirre by the feel of his hand was not sufficient to sustain his conviction for aggravated sexual battery. He argues that there was no other evidence in the record to tie him to the offense. We disagree.

"When faced with a challenge to the sufficiency of the evidence, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence' to support it." *Crowder v. Commonwealth*, 41 Va. App. 658, 662 (2003) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)). We must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Kelly*, 41 Va. App. at 257 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The Commonwealth is required to prove identity "beyond a reasonable doubt." *Crawley v. Commonwealth*, 29 Va. App. 372, 378 (1999). As with any element of an offense, identity may be proved by direct or circumstantial evidence. *See id.* at 375. "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Muhammed v. Commonwealth*, 269 Va. 451, 479 (2005).

Here, the record supports the trial court's finding that the evidence was sufficient to identify Izaguirre as the person that touched Y.M. in her bedroom. Y.M. testified that Izaguirre

was the person that touched her vagina when she was sleeping and that she knew it was him by the feel of his hand. Though Izaguirre argues that this was the only evidence relevant to whether he was the person who touched her, we disagree. Y.M.'s testimony also established that, at the time of the assault, only she, Parada, and Izaguirre were in the apartment, the only exterior door was locked, and the windows were closed. This testimony did not require corroboration and it was sufficient for a conviction. S*ee Fisher v. Commonwealth*, 228 Va. 296, 299 (1984) ("[T]he victim's testimony, if credible and accepted by the finder of fact, is sufficient evidence, standing alone, to support [a] conviction."). Nevertheless, Parada corroborated this testimony by testifying to the same facts. Together, Y.M.'s and Parada's testimony ruled out the possibility of an outside, unknown intruder thereby eliminating a reasonable hypothesis of innocence and leaving the jury only with the factual question of whether Izaguirre or Parada was the person who entered Y.M.'s bedroom in the nighttime and rubbed her vagina through her underwear. And, because Izaguirre admitted to Detective Echenique that he had sexually touched Y.M. "four or five times," at least two of which involved his touching of her vagina, and there was no evidence of any inappropriate relationship between Parada and Y.M., the jury could conclude that Izaguirre was the perpetrator, despite his denial during the recorded interview. As the trier of fact and sole judge of the credibility of the witnesses, the jury was "under no obligation to accept an account it finds unworthy of belief." *Covil v. Commonwealth*, 268 Va. 692, 696 (2004). Finding the testimony of Y.M. and Parada to be credible, the jury could reject Izaguirre's denial as self-serving and find that he was lying to conceal his guilt. *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998). Like Y.M., the jury could reasonably believe that, when she felt a hand on her vagina, it was Izaguirre because it could not have been anyone else. So the trial court did not err in denying Izaguirre's motion to strike relating to the aggravated sexual battery

charge for the touching incident when Y.M. was eight years old.  We thus affirm the trial court's judgment as to the second assignment of error.

C.  *Touching Y.M.'s buttocks over her shorts is sufficient to satisfy the "directly covering" requirement of Code § 18.2-67.10.*

Finally, Izaguirre argues that the evidence was insufficient to sustain his conviction for aggravated sexual battery for rubbing Y.M.'s buttocks over the top of her shorts because the shorts were not "material directly covering [Y.M.'s] intimate parts" as required by Code § 18.2-67.10.  He concedes that touching Y.M.'s underwear over her buttocks would have been sufficient, but he argues that the additional layer of material (the shorts) means it is no longer material "directly covering intimate parts."  Although previous cases have not addressed this specific question, we find that our well-established principles of statutory interpretation refute Izaguirre's argument.

"Statutory interpretation is a question of law which we review de novo, and we determine the legislative intent from the words used in the statute, applying the plain meaning of the words unless they are ambiguous or would lead to an absurd result."  *Pegasystems Inc. v. Appian Corp.*, 81 Va. App. 433, 479 (2024) (quoting *Wright v. Commonwealth*, 278 Va. 754, 759 (2009)).  "Although criminal statutes are to be strictly construed against the Commonwealth, [we] must also 'give reasonable effect to the words used' in the legislation."  *Green v. Commonwealth*, 72 Va. App. 193, 202 (2020) (quoting *Johnson v. Commonwealth*, 37 Va. App. 634, 639 (2002)).  "We do not isolate particular words or phrases but rather examine a statute in its entirety."  *Lewis v. Commonwealth*, 76 Va. App. 92, 105 (2022) (quoting *Colbert v. Commonwealth*, 47 Va. App. 390, 395 (2006)).

"Ordinarily, when a particular word in a statute is not defined therein, a court must give it its ordinary meaning."  *Otey v. Commonwealth*, 61 Va. App. 346, 350 (2012) (quoting *Moyer v. Commonwealth*, 33 Va. App. 8, 35 (2000) (en banc)).  But "we give that phrase 'its ordinary meaning, given the context in which it is used.'"  *Jones v. Commonwealth*, 276 Va. 121, 125

- 10 -

(2008) (quoting *Sansom v. Bd. of Supervisors*, 257 Va. 589, 595 (1999)). "In ascertaining such meaning, dictionary definitions and pertinent analysis in prior cases may be consulted," *Green v. Commonwealth*, 72 Va. App. 193, 203 (2020), but "the plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, or strained construction," *Williams v. Commonwealth*, 57 Va. App. 341, 351 (2010) (quoting *Turner v. Commonwealth*, 226 Va. 456, 459 (1983)). "Hence, 'we will not apply "an unreasonably restrictive interpretation of the statute" that would subvert the legislative intent expressed therein.'" *Id.* (quoting *Armstrong v. Commonwealth*, 263 Va. 573, 581 (2002)). "No rule of construction . . . requires that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope—nor does any rule require that the act be given the 'narrowest meaning.'" *United States v. Raynor*, 302 U.S. 540, 552 (1938).

"An accused is guilty of sexual battery if he or she sexually abuses the complaining witness" when the complaining witness is under 13 years of age. Code § 18.2-67.3. Code § 18.3-67.10(6)(a) defines sexual abuse as an "act committed with the intent to sexually molest, arouse, or gratify any person" where the perpetrator "intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts." Izaguirre challenges only the meaning of "material directly covering such intimate parts."

In this case, we find that Izaguirre's interpretation of the phrase, "material directly covering such intimate parts" in Code § 18.2-67.10 is strained and distorted, rendering a narrow and absurd meaning that conflicts with the obvious legislative intent. As the Commonwealth correctly notes, the legislature amended the statute in 1994 by replacing the phrase, "clothing covering such intimate parts," with the phrase, "material directly covering such intimate parts." *See* Code § 18.2-67.10; 1994 Va. Acts ch. 568. In our view, this legislative change reflected the intent to both broaden and narrow the scope of prohibited sexually abusive behavior. On the one

- 11 -

hand, it broadened the scope by including the intentional touching of a bodily covering that does not qualify as clothing.  On the other hand, it narrowed the scope by excluding the touching of clothing that was not "directly covering" a victim's intimate parts, e.g., the touching of the sleeve of a woman's blouse covering her breasts.  Izaguirre's proposed statutory construction has a different effect, limiting sexually abusive contact to "immediate physical contact" between a victim's intimate parts and a material covering.  In so doing, it excludes clothing contemplated by the statute before and after the 1994 amendment, e.g., a woman's blouse worn over a bra.  Hence, Izaguirre's reliance on a dictionary definition of "directly" as "in immediate physical contact" is misplaced.

By focusing on the one word, "directly," in isolation from the word, "covering," and ignoring the obvious legislative intent of the 1994 statutory amendment, Izaguirre offers an interpretation unsupported by our well-established principles of statutory construction.  "[W]hile we look at the words of the statute to determine legislative intent, we will not interpret a statute in a way that leads to unreasonable or absurd results."  *Jacobs v. Wilcoxson*, 71 Va. App. 521, 526 (2020).  Izaguirre's interpretation guarantees "unreasonable results."  Under Izaguirre's interpretation of the phrase, "material directly covering such intimate parts," a person's guilt or innocence of committing an act of sexual abuse depends on whether the material that he touched was material that was also touching the victim's intimate parts.  So, as Izaguirre argues in his brief, a person who happens to touch the top layer of two layers of clothing covering a victim's intimate parts is only guilty of simple assault and battery, whereas a person who touches someone wearing only one layer of clothing is guilty of sexual battery or aggravated sexual battery.  We find this result to be unreasonable and absurd.

To answer the question presented by Izaguirre's third assignment of error, we apply the settled rule of statutory construction that an enactment should be interpreted, if possible, in a

- 12 -

manner which gives meaning to every word.  In so doing, we apply the plain meaning of the words, "directly" and "covering" and construe the phrase, "material directly covering such intimate parts," in Code § 18.2-67.10 to include material that conceals, but is not necessarily in contact with, a victim's intimate parts.  We thus hold that the trial court did not err in finding the evidence sufficient to convict Izaguirre guilty of aggravated sexual battery.  Accordingly, we affirm the trial court's judgment as to the third assignment of error.

### III. CONCLUSION

For the foregoing reasons, we find no error in the judgment of the trial court. Accordingly, we affirm Izaguirre's convictions.

*Affirmed.*